1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RUDY AROCHA,                              No.  2:  11-cv-2959 LKK KJN P

12              Plaintiff,

13        v.                                   ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14   E. SAUCEDA, et al.,

15              Defendants.

16

17   Introduction

18        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is the motion to dismiss filed August 26, 2013,

20   pursuant to Federal Rule of Civil Procedure 12(b) and (b)(6), on behalf of defendants Miranda,

21   Abshire, Alziebler, Hernandez and Pagala.[1]  (ECF No. 66.)  Defendants argue that plaintiff failed

22   to exhaust administrative remedies as to his federal claims.  Defendants also move to dismiss

23   plaintiff's federal and state law claims on various other grounds.  After carefully considering the

24   record, the undersigned recommends that defendants' motion be granted.

25        In his 36 page opposition to the pending motion, plaintiff alleges that he could not prepare

26   an adequate opposition because he was being denied access to legal supplies, paper, envelope,

27   _____

28   [1]  The court ordered service of four other defendants:  Hart, Munoz,  Montenez and Rogel.  The
     motion to dismiss is not made on behalf of these other four defendants.

                                              1

1   pens, and a computer to do legal research.  (ECF No. 79 at 3.)  Plaintiff states that for this reason,

2   he "reserves the right" to file a supplemental opposition.  (Id.)  On November 22, 2013, plaintiff

3   filed a 37 page supplemental opposition and motion for leave to file the supplemental opposition.

4   (ECF No. 85.)

5           Plaintiff's original opposition contains numerous citations to legal authority.  For this

6   reason, the undersigned does not find that plaintiff's alleged inability to conduct legal research on

7   a computer hindered his ability to prepare his opposition.  Because plaintiff was able to prepare a

8   lengthy and complete opposition, the undersigned further finds that his ability to prepare his

9   opposition was not hindered by his alleged inability to access legal supplies, paper, envelopes and

10  pens.  Plaintiff's supplemental opposition does not contain any information that was unavailable

11  to plaintiff when he filed his original opposition.  The supplemental opposition appears to be

12  further argument by plaintiff that could have been made in the original opposition.

13          The undersigned has spent considerable time evaluating the pending motion, including

14  plaintiff's original opposition.  For these reasons, plaintiff's motion for leave to file a

15  supplemental opposition is denied.[2]

16  Plaintiff's Claims

17          This action is proceeding on the third amended complaint filed January 9, 2013, as to the

18  following claims which allegedly occurred at Mule Creek State Prison ("MCSP"):  1) on

19  December 3, 2006, defendant Hart discussed plaintiff's sexual orientation with inmate Calderon;

20  2) defendant Munoz failed to investigate defendant Hart's alleged misconduct; 3) on December

21  15, 2006, defendant Abshire told inmate Silva that plaintiff was a sexual predator and single

22  celled for homosexual tendencies; 4) on December 18, 2006, defendant Miranda told inmate Silva

23  that plaintiff was the "new gay"; 5) on or around December 18, 2006, defendant Alziebler called

24  plaintiff a child molester and encouraged inmate Silva to tell his homies about plaintiff; defendant

25  Alziebler later showed inmates Calderon and Silva plaintiff's classification chrono stating that

26  plaintiff was a sexually violent predator; 6) defendant Hernandez offered inmate Silva three extra

27  _____

28  [2]   In an abundance of caution, the court has reviewed plaintiff's supplemental opposition and finds that it does not change the court's analysis of defendants' motion to dismiss.

1  lunches if he would tell other inmates that plaintiff was a snitch, etc., 7) on or around December

2  20, 2006, defendant Miranda told inmates that plaintiff was gay; 8) on or around December 6,

3  2006, defendant Hart told inmate Silva that plaintiff was gay; 9) defendant Montenez encouraged

4  inmate Silva to assault plaintiff for being a snitch; 10) defendant Rogel denied plaintiff's

5  grievance alleging that the other defendants were telling inmates that plaintiff was gay, etc.,

6  11) on or around January 6, 2007, defendant Hernandez told inmates they should not talk to

7  plaintiff because he is a child molester and a snitch; 12) on or around January 7, 2007, defendant

8  Hernandez showed inmate Silva a photograph allegedly of plaintiff and his boyfriend;

9  13) defendant Pagala gave plaintiff's mail to another inmate; 14) on January 30, 2007, defendant

10  Abshire encouraged an inmate to attack plaintiff; and 15) on February 2, 2007, defendant

11  Hernandez told inmate Calderon that there was more homosexual information about plaintiff.

12  (ECF No. 40.)

13       The court limited plaintiff to a thirty page amended complaint.  On April 23, 2013, the

14  court issued a 26 page order screening plaintiff's third amended complaint.  (ECF No. 42.)  The

15  court ordered service of the 15 claims listed above.  In his opposition, plaintiff objects to the

16  court's order limiting the number of pages of his third amended complaint and to the court's order

17  serving only 15 of his claims.  These issues are not relevant to the pending motion.

18  <u>Motion to Dismiss For Failure to Exhaust Administrative Remedies</u>

19       *Legal Standard*

20       The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to

21  provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §

22  1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

23  facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

24  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  <u>Porter v. Nussle</u>, 534 U.S. 516,

25  524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding conditions of

26  confinement, whether they involve general circumstances or particular episodes, and whether they

27  allege excessive force or some other wrong.  <u>Porter</u>, 534 U.S. at 532.

28  ////

3

1     Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal

2  standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v. Churner, 532 U.S.

3  731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in grievance proceedings,

4  notably money damages, exhaustion is a prerequisite to suit.  Booth, 532 U.S. at 741.  A prisoner

5  "seeking only money damages must complete a prison administrative process that could provide

6  some sort of relief on the complaint stated, but no money."  Id. at 734.  The fact that the

7  administrative procedure cannot result in the particular form of relief requested by the prisoner

8  does not excuse exhaustion because some sort of relief or responsive action may result from the

9  grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion

10  requirement include allowing prison to take responsive action, filtering out frivolous cases, and

11  creating administrative records).

12     However, a prisoner need not exhaust further levels of review once he has either received

13  all the remedies that are "available" at an intermediate level of review, or has been reliably

14  informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d

15  926, 934–35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief

16  remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief

17  remained available, whether at unexhausted levels or through awaiting the results of the relief

18  already granted as a result of that process.  Brown, 422 F.3d at 936–37.

19     As noted above, the PLRA requires proper exhaustion of administrative remedies.

20  Woodford v. Ngo, 548 U.S. 81, 83–84 (2006).  "Proper exhaustion demands compliance with an

21  agency's deadlines and other critical procedural rules because no adjudicative system can function

22  effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90–

23  91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly

24  exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

25  otherwise procedurally defective administrative grievance or appeal."  Id. at 83–84.

26     The State of California provides its prisoners the right to appeal administratively "any

27  departmental decision, action, condition or policy which they can demonstrate as having an

28  adverse effect upon their welfare."  Cal.Code Regs. tit. 15, § 3084.1(a) (2010).  It also provides

4

1    them the right to file appeals alleging misconduct by correctional officers and officials.  Id. at §

2    3084 .1(e).  In order to exhaust available administrative remedies within this system, a prisoner

3    must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal

4    on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4)

5    third level appeal to the Director of the California Department of Corrections and Rehabilitation.

6    Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D.Cal. 1997) (citing Cal.Code Regs. tit. 15, §

7    3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement

8    under § 1997e(a).  Id. at 1237–38.

9          Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by

10   defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b).

11   Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court may look beyond

12   the pleadings to determine whether a plaintiff exhausted his administrative remedies.  Id. at 1119–

13   20.

14         Although exhaustion is mandatory, an inmate must only exhaust administrative remedies

15   "as are available." 42 U.S.C. § 1997e(a).  Under the Ninth Circuit law, exhaustion is excused

16   when improper screening of grievances occurs.  Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir.

17   2010) (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)).  Sapp establishes that

18   "improper screening of an inmate's administrative grievances renders administrative remedies

19   'effectively unavailable' such that exhaustion is not required under [§ 1997e(a) ]."  Id. at 823.  If

20   prison officials screen out an inmate's grievances or appeals for improper reasons, the inmate

21   cannot pursue the necessary administrative process, and, consequently, his administrative

22   remedies become "unavailable."  Id.

23         *Analysis*

24         Defendants argue that plaintiff failed to exhaust his administrative remedies.  Defendants

25   first claim that the exhibits attached to the third amended complaint do not demonstrate that

26   plaintiff exhausted his administrative remedies, as claimed by plaintiff.

27         Attached as exhibits to the third amended complaint are a large number of administrative

28   grievances filed by plaintiff.  After reviewing these exhibits, the undersigned finds that they do

5

1  not demonstrate that plaintiff exhausted his administrative remedies as to any of the claims

2  against defendants Miranda, Abshire, Alziebeler, Hernandez and Pagala.  (See ECF Nos. 40-1 at

3  1-88; 40-2 at 1-48; 40-3 at 1-79.)  The undersigned herein summarizes the grievances attached to

4  the third amended complaint.

5         Plaintiff's exhibit 1 (ECF No. 40-1 at 1-7) appears to include two grievances filed by

6  plaintiff at the first level on December 25, 2006.  (Id. at 2.)  Plaintiff complained that staff were

7  labeling him as homosexual.  (Id. at 5.)  Plaintiff appealed the response of one of these grievances

8  to the first formal level of review.  (Id. at 5.)  There is no evidence that these grievances were

9  exhausted at the final level of review.

10         Plaintiff's exhibit 2 (ECF No. 40-1 at 8-20) includes documents pertaining to an inmate

11  complaint filed by plaintiff on February 20, 2011, complaining that guards at Pelican Bay State

12  Prison secretly recorded plaintiff.  (ECF No. 40-1 at 12.)  This complaint was cancelled as

13  untimely on March 8, 2011.  (Id. at 19.)

14         Plaintiff's exhibit 3 (ECF 40-1 at 21-50) includes documents pertaining to a grievance

15  filed by plaintiff on February 28, 2011, alleging that on October 27, 2005, Correctional Officer

16  Sauceda conducted a body cavity search.  (ECF No. 40-1 at 26.)  This appeal was screened out as

17  untimely.  (Id. at 25.)

18         Plaintiff's exhibit 4 (ECF No. 40-1 at 51-88) includes documents regarding plaintiff's

19  appeal no. MCSP 07-328.  In this appeal, originally filed on or around January 16, 2007, plaintiff

20  claimed that Medical Technical Assistant Hart made false claims that plaintiff was a threat to her.

21  (ECF No. 40-1 at 78, 85.)   Plaintiff also alleged that E. Sauceda falsified a legal document to

22  label plaintiff as a homosexual in order to inflict harm on plaintiff.  (Id.)

23         Plaintiff's Exhibit 5 (ECF No. 40-2 at 18-37) includes documents regarding plaintiff's

24  appeal no. MCSP-C-07-0042.  In this grievance, originally filed on February 9, 2007, plaintiff

25  claimed that prison guards in administrative segregation, including defendants Hernandez,

26  Alziebler, Abshire and Pagala, gave letters he received from family, friends and girlfriends to

27  prison gang members so that the gang members could murder and assault his family, friends and

28  girlfriends.  (ECF No. 40-2 at 27, 31.)  This appeal was granted in part at the second level of

review on June 12, 2007.  (Id. at 31-34.)  There is no evidence that plaintiff requested a Director's Level Review of this grievance.

Plaintiff's Exhibit 6 (ECF No. 40-2 at 38-48, 40-3 at 1-17) began with an inmate complaint dated August 4, 2011, alleging that prison staff leaked harmful documents deemed confidential.  (ECF No. 40-2 at 40.)  On August 24, 2011, this appeal was cancelled as untimely.  (Id. at 39.)

Plaintiff's Exhibit 7 (ECF No. 40-3 at 18-38) includes documents related to a grievance filed by plaintiff on December 30, 2010, complaining that prison staff had repeatedly broadcast "sexually explicit and highly invasive material" regarding plaintiff.  (ECF No. 40-3 at 19.)  On January 6, 2011, this grievance was returned to plaintiff on grounds that it was duplicative of another appeal.  (Id. at 26.)

Plaintiff's exhibit 8 (ECF No. 40-3 at 39-45) includes documents related to an inmate complaint filed by plaintiff on March 7, 2011, alleging sexual harassment by prison staff.  (ECF No. 40-3 at 40.)  This appeal was cancelled, although the grounds of the cancellation are unclear.  (Id.)

Plaintiff's Exhibit 9 (ECF No. 40-3 at 47-53) includes documents related to an inmate complaint filed by plaintiff on May 14, 2011, complaining about retaliation and sexual discrimination.  (ECF No. 40-3 at 48.)  This appeal was screened out as untimely.  (Id. at 53.)

Plaintiff's Exhibit 11 (ECF No. 40-3 at 61-79) includes documents regarding plaintiff's appeal no. MCSP-C-07-0628.  In the first level grievance, signed by plaintiff on March 5, 2007, plaintiff alleged sexual misconduct by prison staff.  (ECF No. 40-3 at 63.)  On June 15, 2007, the second level appeal was denied.  (Id. at 67-68.)  This response stated that plaintiff was complaining that Medical Technical Assistant Miranda accessed his medical records and made copies of obscene materials, which he gave to another inmate.  (Id. at 67.)  Attached to exhibit 11 is a copy of the memorandum to plaintiff returning his Director Level Appeal for grievance MCSP 07-0328 as untimely.  (Id. at 62.)  Plaintiff submitted no documents demonstrating that he filed a Director's Level appeal regarding appeal MCSP 07-0628.

////

In summary, the administrative grievances attached as exhibits to plaintiff's third amended complaint do not demonstrate administrative exhaustion of any of the claims against defendants Miranda, Abshire, Hernandez and Pagala.

In support of the motion to dismiss, defendants next refer to the declaration of M. Elorza, the appeals coordinator at MCSP, where the alleged deprivations occurred.  (ECF No. 66-2.)  M. Elorza states that between December 3, 2006, and December 7, 2011, plaintiff submitted seventeen non-medical appeals which were accepted for formal review at MCSP.  (Id. at 2.)  M. Elorza's declaration contains a chart of these appeals, including the log number, date received, personnel involved, the issue and the disposition.  (Id. at 2-4.)   After reviewing the chart, the undersigned finds that none of the grievances cited in the chart demonstrate exhaustion of the claims against defendants Miranda, Abshire, Alziebler, Hernandez and Pagala.  The undersigned summarizes the chart herein.

In the chart, M. Elorza identifies grievance MCSP-C-07-00328, included in plaintiff's exhibit 4.  M. Elorza confirms that this grievance was received on February 14, 2007, and denied at the second level of review, and not pursued to the Director's Level.  (ECF No. 66-2 at 2.)

In the chart, M. Elorza identifies grievance no. MCSP-C-07-0042, included in plaintiff's exhibit 5.  M. Elorza confirms that this grievance was granted in part at the second level of review and not pursued to the Director's Level.  (Id.)

In the chart, M. Elorza identifies grievance no. MCSP-C-07-0628, referred to in plaintiff's exhibit 11.  M. Elorza states that this grievance was denied at the second level of review.  (Id.)

The chart contained in M. Elorza's declaration goes on to describe the 14 other non-medical grievances submitted by plaintiff during the relevant time period:  1)  MCSP-07-916 received April 18, 2007, alleging that Hernandez sexually harassed plaintiff by winking at him; denied at first level of review on June 8, 2007; 2) MCSP C-07-0940 received April 23, 2007, alleging mail tampering by Ziebert, Abshire and Hernandez; granted in part at second level of review on July 30, 2007; 3) MCSP C-07-1098 received May 1, 2007, alleging that Rutherford conducted an inadequate investigation of appeal no. MCSP C-07-238; denied on June 12, 2007; 4) MCSP C-07-1200, received on May 18, 2007, alleging that Hernandez and Sauceda labeled

8

plaintiff as a homosexual, etc;, granted in part at first level of review on June 14, 2007; 5) MCSP C-07-1588, received on July 3, 2007, alleging that Pagala sexually harassed plaintiff; granted in part at first level of review on July 23, 2007; 6) MCSP C-07-1731, received July 5, 2007, alleging that Cherry conducted an incomplete investigation of MCSP C-07-6278; denied at second level of review on August 16, 2007; 7) MCSP C-07-2695, received October 13, 2007, alleging that Sauceda, Pagala, Abshire, Dixon, Pollard, Rutherford, Kawalcheck, Hernandez, Dion, Rogel, Subia and Reyes solicited rape, mail theft, etc.; granted in part at the first level of review on November 30, 2007; 8) MCSP-C-08-1340, received May 23, 2008, alleging that Dixon and Farmer placed plaintiff's breakfast on a paper tray; granted in part on June 4, 2008; 9) MCSP C-08-1930, received on July 28, 2008, alleging that Sisneros and Sutterland damaged personal property; granted in part at second level of review on October 15, 2008; 10) MCSP C-08-2108, received August 18, 2008, alleging that Farmer denied plaintiff due process at a disciplinary hearing; denied at second level of review on September 23, 2008; 11) MCSP C-08-2183, received on August 26, 2008, challenging confiscation of Maxim magazine; granted in part at first level of review; 12) MCSP-C-08-2464, received October 7, 2008, alleging that Sutterland confiscated personal property; granted in part at first level of review on November 18, 2008; 13) MCSP-C-08-2521, received October 17, 2008, alleging damage of personal property; granted in part at first level of review on November 5, 2008; 14) MCSP-C-08-2525, received October 17, 2008, alleging damage to personal property; granted in part at first level on November 5, 2008.  (ECF No. 66-2 at 4-5).

The undersigned finds that the chart in M. Elorza's declaration demonstrates that none of the non-medical administrative appeals submitted by plaintiff during the relevant time period administratively exhausted the claims made against defendants Miranda, Abshire, Alziebler, Hernandez and Pagala.

Defendants also refer to the declaration of J.D. Lozano, the Chief of the Office of Appeals for the California Department of Corrections and Rehabilitation ("CDCR").  (ECF No. 66-3.) J.D. Lozano states that the Office of Inmate Appeals tracking system discloses that between December 3, 2006, and November 2, 2011, plaintiff submitted sixteen appeals to the Office of

1    Inmate Appeals.  (Id. at 2.)  Of these appeals, four were accepted and one pertained to an incident

2    which occurred at MCSP.  (Id.)  This appeal, which was formally denied at the Third Level of

3    Review, originated from an event involving plaintiff's personal property which was first screened

4    out on October 26, 2006, for missing time constraints.  (Id.)  J.D. Lozano's declaration also

5    demonstrates that the claims made against defendants Miranda, Abshire, Alziebler, Hernandez

6    and Pagala are not administratively exhausted.

7         In his opposition to defendants' motion, plaintiff argues that his failure to exhaust his

8    administrative remedies should be excused on several grounds.  The undersigned addresses these

9    arguments herein.

10        First, plaintiff argues that his ability to exhaust administrative remedies was blocked by

11   defendants' misconduct, threats, soliciting rape and violence and retaliation.  (ECF No. 79 at 1,

12   6.)  Plaintiff argues that he filed untimely grievances because of defendants' misconduct and, for

13   this reason, the untimeliness of his grievances should have been excused.  (Id. at 8.)

14        "[T]he PLRA ... does not require exhaustion when circumstances render administrative

15   remedies 'effectively unavailable.'"  Sapp, 623 F.3d at 822 (citation omitted).  The Ninth Circuit

16   has acknowledged that other circuits have held that threats of retaliation for filing a grievance

17   excuse exhaustion.  Albino v. Baca, 697 F.3d 1023, 1034 n.7 (9th Cir. 2012) (citing Turner v.

18   Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Macias v. Zenk, 495 F.3d 37, 45 (2d Cir. 2007);

19   Kaba v. Stepp, 458 F.3d 678, 685-86 (7th Cir. 2006).)

20        As observed by defendants in their reply, plaintiff's argument that he did not pursue his

21   administrative remedies because he was threatened with retaliation is undermined by his filing of

22   seventeen administrative appeals between January 2007 and October 2008.  Several of these

23   grievances named defendants and alleged sexual harassment.  For example, in January 2007,

24   plaintiff filed a grievance alleging that defendant Hart made false claims against him.  (ECF No.

25   40-1 at 51-88).  On or around February 9, 2007, plaintiff filed a grievance alleging that

26   defendants Hernandez, Alziebler, Abshire and Pagala gave his mail to gang members so that they

27   would assault plaintiff's family, friends and girlfriend.  On or around March 5, 2007, plaintiff

28   submitted a grievance alleging that defendant Miranda made copies of his records and gave them

10

1    to another inmate.  Plaintiff pursued these grievances to the second level of review.  The alleged

2    threats of retaliation did not prevent plaintiff from filing and pursuing these administrative

3    grievances.  For these reasons, the undersigned finds that plaintiff has not demonstrated that

4    threats of retaliation prevented him from exhausting his administrative remedies.

5           Plaintiff next alleges that defendants routinely disseminated false information about

6    plaintiff to other inmates and solicited other inmates to harm plaintiff.  (ECF No. 79 at 5.)

7    Plaintiff alleges that because these inmates were threatened by defendants if they disclosed the

8    solicitations to plaintiff, he did not know about their existence until years later.  (Id.)  As

9    indicated above, plaintiff filed several administrative appeals alleging that defendants disclosed

10   confidential information regarding him to other inmates.  Some of these grievances were

11   addressed on the merits and others were denied as untimely.  In other words, plaintiff was able to

12   file some timely grievances alleging that staff gave false information regarding plaintiff to other

13   inmates.  For this reason, plaintiff's conclusory and unsubstantiated claim that he could not

14   exhaust some of his claims earlier because he only recently discovered their grounds due to

15   witness intimidation is not well supported.

16          Plaintiff next argues that he could not exhaust his administrative remedies because he was

17   transferred to High Desert State Prison ("HDSP") in December 2008.  (Id. at 6.)  Plaintiff alleges

18   that when he transferred to HDSP, he remained in a state of fear that he would be retaliated

19   against for exhausting his claims.  (Id.)  Other than this conclusory allegation, plaintiff offers no

20   specific allegations to support this claim.  As indicated above, plaintiff submitted administrative

21   grievances regarding the claims on which this action is proceeding at MCSP, prior to his transfer

22   to HDSP.  For these reasons, the undersigned finds that plaintiff's transfer to HDSP did not

23   excuse his failure to administratively exhaust his claims.

24          Finally, plaintiff suggests that he could not exhaust his administrative remedies because he

25   was placed in administrative segregation.  (Id. at 6.)  In support of this argument, plaintiff refers

26   to exhibit 20 attached to the opposition.  Exhibit 20 is an order dated May 30, 2013, for plaintiff's

27   placement in ad seg.  (Id. at 28.)  Plaintiff's placement in ad seg in 2013 did not prevent plaintiff

28   from exhausting his claims.

1    For the reasons discussed above, the undersigned finds that plaintiff failed to exhaust his

2    administrative remedies.  Defendants' motion to dismiss on this ground should be granted.

3    Motion to Dismiss for Failure to State A Claim

4        *Legal Standard for Motion to Dismiss Pursuant to Federal Rule 12(b)(6)*

5        Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

6    "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

7    considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

8    must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

9    (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

10   McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

11   1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

12   than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

13   cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

14   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

15   statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

16   upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

17   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

18   draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

19   U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

20   of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard Reiner & Co.,

21   896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).

22       A motion to dismiss for failure to state a claim should not be granted unless it appears

23   beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

24   entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se

25   pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

26   404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz

27   v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc).  However, the court's liberal

28   interpretation of a pro se complaint may not supply essential elements of the claim that were not

1    pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

2                    *Remaining Arguments Regarding Federal Claims*

3            Defendants argue that plaintiff's federal claims are barred by the statute of limitations.

4    The undersigned need not reach this issue because plaintiff's claims are not administratively

5    exhausted.[3]

6            Defendants argue that plaintiff's claims against them in their official capacity should be

7    dismissed.  Defendants correctly argue that the Eleventh Amendment bars any claims for

8    damages brought against them in their official capacity.  See Henry v. County of Shasta, 132 F.3d

9    512, 517 (9th Cir. 1997); Regents of the University of California v. Doe, 519 U.S. 425, 429

10   (1977).

11           In his opposition, plaintiff correctly states that he may proceed against defendants in their

12   official capacity to the extent he seeks injunctive relief against them.  See Doe v. Lawrence

13   Livermore Nat'l  Lab, 131 F.3d 836, 839 (9th Cir. 1997).

14           In their reply, defendants argue that plaintiff's request for injunctive relief is moot as he

15   has now been transferred to California State Prison-Corcoran.  On June 5, 2013, plaintiff filed a

16

17   _____

18   [3]   Plaintiff had four years from the date his claims accrued to file this action. See Cal. Civ. Proc.
     Code § 335.1 (the statute of limitations for a personal injury action is two years from the date of
     accrual); Martinez v. Gomez, 137 F.3d 1124, 1125–26 (9th Cir. 1998) (per curiam) (prisoner
19   serving life sentence with the possibility of parole is entitled to tolling of two years pursuant to
     California Code of Civil Procedure§ 352.1).  The limitation period is also tolled while an inmate
20   is exhausting administrative remedies as required by 42 U.S.C. § 1997e(a).  See Brown v. Valoff,
     422 F.3d 926, 943 (9th Cir. 2005).
21          Plaintiff's original complaint is court file stamped November 7, 2011.  (ECF 1.)  It is
     difficult to determine the date the complaint was filed pursuant to the mailbox rule as the proof of
22   service states that it was mailed in October 2011 but contains no date.  In the motion to dismiss,
     defendants state that plaintiff's last administrative appeal regarding the claims raised in this
23   action, i.e. MCSP-C-07-2695, was submitted on October 13, 2007.  Defendants contend that
     plaintiff abandoned his efforts to exhaust his administrative remedy and did not seek further
24   review of this appeal.  Defendants argue that the instant action was filed more than four years
     after October 2007.
25          According to M. Elorza's declaration, appeal No. MCSP-C-07-2695 was granted in part at
     the first level of review on November 30, 2007.  Arguably, the statute of limitations ran from
26   November 30, 2007, which would render the instant action timely.  Moreover, an inquiry into the
     date plaintiff filed this action pursuant to the mailbox rule may also render this action timely.
27   However, the undersigned need not reach these issues because plaintiff's claims are not
     administratively exhausted.
28
                                                      13

1    notice of change of address reflecting his new housing location.[4]

2          When an inmate seeks injunctive or declaratory relief concerning the prison where he is

3    incarcerated, his claims for such relief become moot when he is no longer subjected to those

4    conditions.  See Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Dilley v. Gunn, 64 F.3d 1365,

5    1368-69 (9th Cir. 1995); Preiser v. Newkirk, 422 U.S. 395, 402–04 (1975) (inmate's request for

6    declaratory judgment rendered moot by inmate's transfer to another prison); Edmundson v.

7    MacDonald, 415 Fed. Appx. 838, 838–39 (9th Cir. 2011) (holding that district court properly

8    dismissed prisoner's claims for declaratory relief and injunctive relief as moot because the

9    prisoner no longer was housed in the prison where the allegedly unconstitutional events took

10   place).  Plaintiff has not shown that there is a likelihood that he will be returned to MCSP and

11   subject to the alleged deprivations again.  Spencer v. Kemna, 523 U.S. 1, 17 (1998).

12         Because plaintiff is no longer housed at MCSP, where the alleged deprivations occurred,

13   his claims for injunctive relief are moot.  Accordingly, for the reasons discussed above,

14   defendants' motion to dismiss the claims made against them in their official capacity should be

15   granted.

16         *State Law Claims:  Alleged Failure to Comply with California Claims Act*

17         Plaintiff alleges violations of state law, including violations of the Unruh Act, invasion of

18   privacy, sexual harassment, libel, slander and defamation.  Defendants argue that plaintiff is

19   barred from pursuing his state law claims because he filed this action more than six months after

20   his claims were rejected by the California Victim Compensation and Government Claims Board,

21   as required by California law.

22         In his opposition, plaintiff states that he cannot adequately oppose defendants' motion to

23   dismiss regarding his filing of government claims because he does not have access to his legal

24   property containing the claim records.  (ECF No. 79 at 6.)  However, the undersigned notes that

25   plaintiff's supplemental opposition does not include any exhibits regarding this issue.  In his

26   supplemental opposition, plaintiff does not claim that he does not have access to documents

27   _____

28   [4]  Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

1    regarding this claim.  (ECF No. 85 at 19.)  Accordingly, the undersigned addresses the merits of

2    this claim because plaintiff has had an adequate opportunity to file briefing in support of his

3    opposition.

4            California's Tort Claims Act requires that a tort claim against a public entity or its

5    employees be presented to the California Victim Compensation and Government Claims Board

6    ("Claims Board") no more than six months after the cause of action accrues.  Cal. Gov't. Code §§

7    905.2, 910, 911.2, 945.4, 950–950.2.  Presentation of a written claim and action on or rejection of

8    the claim are conditions precedent to suit, <u>Shirk v. Vista Unified Sch. Dist.</u>, 42 Cal.4th 201, 208–

9    09 (Cal. 2007); <u>State v. Superior Court of Kings Cnty.</u>, 32 Cal.4th 1234, 1239 (Cal. 2004); <u>Mabe

10   v. San Bernardino Cnty. Dep't of Pub. Soc. Servs</u>., 237 F.3d 1101, 1111 (9th Cir. 2001), and suit

11   must be commenced not later than six months after the date the rejection is deposited in the mail.

12   Cal. Gov't Code § 945.6(a)(1).  Where compliance with the California Tort Claims Act is

13   required, the plaintiff has the burden of pleading and proving compliance with the California

14   Government Claims Act.  <u>Mangold v. California Pub. Utils. Comm'n.</u>, 67 F.3d 1470, 1477 (9th

15   Cir. 1995).   In addition, Unruh Act causes of action are subject to the Tort Claims Act

16   presentment requirements.  <u>K.S. v. Fremont Unified Schl. Dist.</u>, 2007 WL 4287522, * 4 (N.D.

17   Cal. 2007) (citing <u>Gates v. Sup. Ct.</u>, 32 Cal.App.4th 481, 508 (1995).)

18           Defendants argue that plaintiff did not file this action within six months of the rejection of

19   his claims by the California Victim Compensation and Government Claims Board.  In support of

20   this argument, defendants rely on the declaration of E. Rivera, custodian of records for the Victim

21   Compensation and Government Claims Board, attached to the motion to dismiss.   (ECF No. 66-

22   4.)  In the declaration, E. Rivera states that a diligent search of the records maintained by the

23   Government Claims Program indicates that plaintiff submitted three claims.  (<u>Id.</u>)  E. Rivera goes

24   on to discuss when the responses to the claims were sent to plaintiff.

25           Plaintiff submitted claim G568139 alleging sexual harassment, slander, assaults, etc. by

26   staff at MCSP on June 5, 2007.  (ECF 66-4 at 6-7.)  On August 28, 2007, the Victim

27   Compensation and Government Claims Board sent plaintiff a letter stating that the Board denied

28   claim G568139 on August 23, 2007.  (<u>Id.</u> at 13.)

On June 16, 2008, plaintiff submitted claim G575907 alleging sexual abuse, etc. at MCSP. (Id. at 15-16.)  On August 29, 2008, the Victim Compensation and Government Claims Board sent plaintiff a letter stating that the Board denied his claim on August 21, 2008.  (Id. at 51.)

Plaintiff submitted a third claim to the Board, claim G566708 on or around March 21, 2007.  (Id. at 53.)   On May 25, 2007, the Victim Compensation and Government Claims Board sent plaintiff a letter stating that the Board denied his claim on May 22, 2007.  (Id.  at 55.)  In his declaration, E. Rivera states that this claim, any amendment to the claim and all notices or correspondences from this claim are no longer available as the claim as been misplaced.  (ECF No. 66-4 at 2.)

"In ruling on a motion to dismiss [pursuant to Federal Rule of Civil Procedure 12(b)(6)], a district court generally 'may not consider any material beyond the pleadings.'"  Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998) (quoting Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994)).[5] However, in ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court may take judicial notice of  "matters of public record" pursuant to Federal Rule of Evidence 201.  Mack v. S. Bay Beer  Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).  Therefore, the court may take judicial notice of the documents attached to E. Rivera's declaration as they are matters of public record.

Plaintiff has not met his burden of demonstrating that he filed this action within six months of the denial of any relevant claim by the Victim Compensation and Government Claims Board.  Plaintiff did not file this action within six months of the denial of the claims attached to E. Rivera's declaration.  The fact that plaintiff is imprisoned does not toll the statute of limitations for commending a government tort claim action.  Cal. Code Civ. P. § 352.1(b); Moore v. Twomey, 120 Cal.App.4th 910, 914 (2004).  For these reasons, plaintiff's state law claims should be dismissed.

////

---

[5]  In contrast, in deciding a motion to dismiss for failure to exhaust administrative remedies, a court may "look beyond the pleadings and decide disputed issues of fact."  Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003).

1        *Failure to State a Claim*

2            Defendants move to dismiss plaintiff's Unruh Act claims on grounds that they are not

3 liable under this act.  The Unruh Civil Rights Act entitles individuals to "full and equal

4 accommodations, advantages, facilities, privileges, or services in all business establishments of

5 every kind whatsoever."  Cal. Civ. Code § 51(b).  Prisons are not business establishments under

6 the Unruh Act.  See Taormina v. Cal. Dept. of Corrections, 946 F.Supp. 829, 834 (S.D.Cal.

7 1996); Wilkins-Jones v. County of Alameda, 2010 WL 4780291 at * 9 (N.D.Cal. Nov. 16, 2010).

8 For this reason, the Unruh Act does not apply to defendants.  Accordingly, defendants' motion to

9 dismiss plaintiff's Unruh Act claims should be granted.

10            Defendants move to dismiss plaintiff's sexual harassment claims on grounds that there is

11 no common law claim for sexual harassment in California.  Defendants are correct.  See Myers v.

12 Trendwest Resorts, Inc., 148 Cal.App.4th 1403, 1426-27 (2007), citing Medix Ambulance

13 Service, Inc. v. Superior Court, 97 Cal.App.4th 109, 118-19 (2002).  Accordingly, defendants'

14 motion to dismiss plaintiff's sexual harassment claims should be granted.

15        *Statute of Limitations*

16            Defendants argue that plaintiff's remaining state law claims for invasion of privacy,

17 defamation, libel and slander are barred by the statute of limitations for these claims set forth in

18 the California Code of Civil Procedure.  See Cal. Code Civ. Proc. § 335.1; Cain v. State Farm

19 Mut. Auto. Ins. Co., 62 Cal.App.3d 310, 314 (Cal.App. 1976) (setting forth that § 335.1, formerly

20 codified at § 340, contains statute of limitations for tortious invasion of privacy); Cal. Code Civ.

21 Proc. § 340(c) (statute of limitations for defamation is one year); Cal. Code Civ. Proc. § 340(a)

22 (statute of limitations for libel and slander is one year).

23            The statute of limitations for claims against the state and its employees is dictated by the

24 six month statute of limitations set for tort claims contained in the California Government Code

25 discussed above.  See Ashlee R. ex. rel. Russell v. Oakland Unified School Dist. Financing, 2004

26 WL 1878214 at * 6 (N.D. Cal. 2004); Doe v. Petaluma City Sch. District, 830 F.Supp. 1560, 1570

27 (N.D. Cal. 1993); Martell v. Antelope Valley Hosp. Med.Ctr., 67 Cal.App.4th 978, 984 (1988).

28 In other words, the statute of limitations contained in the California Code of Civil Procedure is

1   not applicable to tort claims made against the state and its employees.  Therefore, the undersigned

2   need not address defendants' motion to dismiss plaintiff's claims as barred by the statute of

3   limitations contained in the California Code of Civil Procedure.

4          Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for leave to file a

5   supplemental opposition to defendants' motion to dismiss (ECF No. 85) is denied;

6          IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 66) be

7   granted.

8          These findings and recommendations are submitted to the United States District Judge

9   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

10  after being served with these findings and recommendations, any party may file written

11  objections with the court and serve a copy on all parties.  Such a document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

13  objections shall be filed and served within fourteen days after service of the objections.  The

14  parties are advised that failure to file objections within the specified time may waive the right to

15  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16  Dated:  December 19, 2013

17

18  ar2959.mtd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28