1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RUDY AROCHA,                          No.  2:  11-cv-2959 MCE KJN P

12              Plaintiff,

13       v.                                ORDER AND FINDINGS AND
                                           RECOMMENDATIONS
14   E. SAUCEDA, et al.,

15              Defendants.

16

17   Introduction

18          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is the summary judgment motion filed on behalf of

20   defendants Munoz, Hart and Rogel on the grounds that plaintiff failed to exhaust administrative

21   remedies.  (ECF No. 111.)  Also pending is the motion to dismiss pursuant to Federal Rule of

22   Civil Procedure 12(b)(6) filed on behalf of the same defendants.  (ECF No. 114.)  For the reasons

23   discussed herein, the undersigned recommends that defendants' summary judgment motion be

24   granted.[1]  Because the undersigned recommends that defendants' summary judgment motion be

25   granted, defendants' motion to dismiss is vacated without prejudice.

26   ////

27   _____

28   [1]  On January 27, 2014, the court dismissed the claims against the other defendants ordered
     served based on plaintiff's failure to exhaust administrative remedies.  (ECF Nos. 93, 100.)

                                           1

1    After having been granted several extensions of time, plaintiff filed his opposition to

2  defendants' summary judgment motion on November 17, 2014.  (ECF No. 130; <u>see also</u> ECF No.

3  139 (order detailing history of plaintiff's requests for extension of time to file opposition.)  On

4  November 25, 2014, defendants filed a reply to plaintiff's opposition.  (ECF No. 131.)

5    After filing his opposition, plaintiff filed two requests for extensions of time to file a

6  supplemental opposition on grounds that he had been denied access to his legal property.  (ECF

7  Nos. 132, 136.)  On January 9, 2015, the undersigned granted plaintiff's motions for an extension

8  of time to file a supplemental opposition.  (ECF No. 139.)  On February 19, 2015, plaintiff filed a

9  supplemental opposition.  (ECF No. 142.)  On February 26, 2015, defendants filed a reply to

10  plaintiff's supplemental opposition.  (ECF No. 146.)

11  <u>Exhaustion of Administrative Remedies</u>

12    The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

13  brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

14  prisoner confined in any jail, prison, or other correctional facility until such administrative

15  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion

16  requirement applies to all inmate suits about prison life, whether they involve general

17  circumstances or particular episodes, and whether they allege excessive force or some other

18  wrong."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

19    Proper exhaustion of available remedies is mandatory, <u>Booth v. Churner</u>, 532 U.S. 731,

20  741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

21  critical procedural rules[.]"  <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006).  The Supreme Court has

22  also cautioned against reading futility or other exceptions into the statutory exhaustion

23  requirement.  <u>See</u> <u>Booth</u>, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary,

24  a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

25  procedurally defective administrative grievance or appeal.  <u>See</u> <u>Woodford</u>, 548 U.S. at 90-93.

26  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative

27  review process in accordance with the applicable procedural rules,' [] - rules that are defined not

28  by the PLRA, but by the prison grievance process itself."  <u>Jones v. Bock</u>, 549 U.S. 199, 218

1  (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027

2  (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

3  exhaustion.'") (quoting Jones, 549 U.S. at 218).

4          In California, prisoners may appeal "any policy, decision, action, condition, or omission

5  by the department or its staff that the inmate or parolee can demonstrate as having a material

6  adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).

7  On January 28, 2011, California prison regulations governing inmate grievances were revised.

8  Cal. Code Regs. tit. 15, § 3084.7.  Now inmates in California proceed through three levels of

9  appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal

10  form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the

11  Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code

12  Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  Id.

13  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a

14  prisoner's administrative remedies.  See id. § 3084.7(d)(3).  Since 2008, medical appeals have

15  been processed at the third level by the Office of Third Level Appeals for the California

16  Correctional Health Care Services.  A California prisoner is required to submit an inmate appeal

17  at the appropriate level and proceed to the highest level of review available to him.  Butler v.

18  Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir.

19  2002).  Since the 2011 revision, in submitting a grievance an inmate is required to "list all staff

20  members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15,

21  § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding

22  the issue being appealed at the time," and he or she must "describe the specific issue under appeal

23  and the relief requested."  Cal. Code Regs. tit. 15, §§ 3084.2(a)(4).  An inmate now has thirty

24  calendar days to submit his or her appeal from the occurrence of the event or decision being

25  appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code

26  Regs. tit. 15, § 3084.8(b).

27  ////

28  ////

3

1    Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock,

2    549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[2]

3    "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),]

4    should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

5    2014) (en banc).  A defendant need only show "that there was an available administrative remedy,

6    and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172.  Once the

7    defense meets its burden, the burden shifts to the plaintiff to show that the administrative

8    remedies were unavailable.  See Albino, 697 F.3d at 1030-31.

9    A prisoner may be excused from complying with the PLRA's exhaustion requirement if

10   he establishes that the existing administrative remedies were effectively unavailable to him.  See

11   Albino, 747 F.3d at 1172-73.  When an inmate's administrative grievance is improperly rejected

12   on procedural grounds, exhaustion may be excused as effectively unavailable.  Sapp v. Kimbrell,

13   623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir.

14   2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable");

15   Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown

16   v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where

17   appeal granted at second level and no further relief was available).

18   Where a prison system's grievance procedures do not specify the requisite level of detail

19   for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

20   requirement if it "alerts the prison to the nature of the wrong for which redress is sought." Griffin

21   v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  "A grievance need not include legal terminology

22   or legal theories unless they are in some way needed to provide notice of the harm being grieved.

23   A grievance also need not contain every fact necessary to prove each element of an eventual legal

24   claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

25   resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120.

26   _____

[2]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a]

27   defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031.
     Relevant evidence includes statutes, regulations, and other official directives that explain the

28   scope of the administrative review process. Id. at 1032.

4

1   If under the Rule 56 summary judgment standard the court concludes that plaintiff has

2   failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

3   Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

4   Legal Standard for Summary Judgment

5   Summary judgment is appropriate when it is demonstrated that the standard set forth in

6   Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

7   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

8   judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

13   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

14   56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

15   only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

16   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

17   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

18   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

19   burden of production may rely on a showing that a party who does have the trial burden cannot

20   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

21   should be entered, after adequate time for discovery and upon motion, against a party who fails to

22   make a showing sufficient to establish the existence of an element essential to that party's case,

23   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

24   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

25   necessarily renders all other facts immaterial."  Id. at 323.

26   Consequently, if the moving party meets its initial responsibility, the burden then shifts to

27   the opposing party to establish that a genuine issue as to any material fact actually exists.  See

28   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

1    establish the existence of such a factual dispute, the opposing party may not rely upon the

2    allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

3    form of affidavits, and/or admissible discovery material in support of its contention that such a

4    dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

5    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

6    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

7    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

8    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

9    a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

10   (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

11   1564, 1575 (9th Cir. 1990).

12          In the endeavor to establish the existence of a factual dispute, the opposing party need not

13   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

14   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

15   trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

16   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

17   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

18   amendments).

19          In resolving a summary judgment motion, the court examines the pleadings, depositions,

20   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

21   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

22   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

23   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

24   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

25   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

26   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

27   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

28   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

1   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

2   trial.'" <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

3           By contemporaneous notice provided on July 30, 2014, (ECF No. 22-2), plaintiff was

4   advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

5   Rules of Civil Procedure.  <u>See</u> <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (<i>en banc</i>);

6   <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

7   <u>Background</u>

8           This action is proceeding on the third amended complaint filed January 9, 2013.  (ECF

9   No. 40.)  The alleged deprivations occurred at Mule Creek State Prison ("MCSP").

10          On March 23, 2013, the undersigned issued an order screening the third amended

11  complaint.  (ECF No. 42.)  This action proceeds on the following claims against defendants Hart,

12  Munoz and Rogel.

13          *Claims Against Defendant Hart*

14          Plaintiff alleges that on December 3, 2006, defendant Hart discussed plaintiff's sexual

15  orientation with inmate Calderon.  (ECF No. 40 at ¶ 27; ECF No. 42 at 6.)

16          *Claims Against Defendant Munoz*

17          Plaintiff alleges that defendant Munoz failed to investigate defendant Hart's alleged

18  misconduct.  In particular, plaintiff alleges that on December 5, 2006, he wrote an informal letter

19  of complaint complaining about defendant Hart's sexual harassment.  (ECF No. 40 at ¶ 32; ECF

20  No. 42 at 6.)  On December 8, 2006, plaintiff gave this letter to defendant Munoz.  (ECF No. 40

21  at ¶ 33; ECF No. 42 at 6.)  Plaintiff did not hear back from defendant Munoz regarding this letter.

22  (ECF No. 40 at ¶ 34; ECF No. 42 at 6.)  Plaintiff alleges that defendant Munoz took no steps to

23  protect plaintiff from defendant Hart.  (ECF No. 40 at ¶ 35; ECF No. 42 at 6.)  Plaintiff alleges

24  that defendant Munoz took no steps to protect plaintiff from the sexually threatening living

25  conditions.  (ECF No. 40 at ¶ 35; ECF No. 42 at 6.)

26          *Claims Against Defendant Rogel*

27          Plaintiff alleges that defendant Rogel failed to intervene to stop other defendants from

28  telling other inmates that plaintiff was gay, etc.  In particular, plaintiff alleges that on December

25, 2006, he submitted an administrative appeal to defendant Rogel alleging "false and slanderous defaming homosexual labeling of plaintiff's person by ad seg unit staff, based upon their employee misconduct." (ECF No. 40 at ¶ 59; ECF No. 42 at 10.)  Plaintiff later heard defendant Montenez tell defendant Rogel, "some people are saying 'he's gay.'" (ECF No. 40 at ¶ 60; ECF No. 42 at 10-11.)  Plaintiff heard defendant Hart state to defendant Rogel, "I really don't want to be part of this.  I really don't know anything." (ECF No. 40 at ¶ 60; ECF No. 42 at 11.)  Defendant Rogel denied plaintiff's administrative appeal.  (ECF No. 40 at ¶ 60; ECF No. 42 at 11.)  Plaintiff alleges that by denying the appeal, defendant Rogel shielded the staff involved in the misconduct.  (ECF No. 40 at ¶ 60; ECF No. 42 at 11.)

Documents Regarding Administrative Exhaustion Attached to Third Amended Complaint

In the findings and recommendations addressing the motion to dismiss for failure to exhaust administrative remedies filed on behalf of the other defendants, the undersigned summarized the grievances attached to the third amended complaint.  (ECF No. 93 at 6-7.)  The undersigned sets forth this summary herein.

Plaintiff's exhibit 1 (ECF No. 40-1 at 1-7) appears to include two grievances filed by plaintiff at the first level on December 25, 2006.  (Id. at 2.)  Plaintiff complained that staff were labeling him as homosexual.  (Id. at 5.)  Plaintiff appealed the response of one of these grievances to the first formal level of review.  (Id. at 5.)  There is no evidence that these grievances were exhausted at the final level of review.

Plaintiff's exhibit 2 (ECF No. 40-1 at 8-20) includes documents pertaining to an inmate complaint filed by plaintiff on February 20, 2011, complaining that guards at Pelican Bay State Prison secretly recorded plaintiff.  (ECF No. 40-1 at 12.)  This complaint was cancelled as untimely on March 8, 2011.  (Id. at 19.)

Plaintiff's exhibit 3 (ECF 40-1 at 21-50) includes documents pertaining to a grievance filed by plaintiff on February 28, 2011, alleging that on October 27, 2005, Correctional Officer Sauceda conducted a body cavity search.  (ECF No. 40-1 at 26.)  This appeal was screened out as untimely.  (Id. at 25.)

////

8

Plaintiff's exhibit 4 (ECF No. 40-1 at 51-88) includes documents regarding plaintiff's appeal no. MCSP 07-328.  In this appeal, originally filed on or around January 16, 2007, plaintiff claimed that defendant Hart made false claims that plaintiff was a threat to her.  (ECF No. 40-1 at 78, 85.)  Plaintiff also alleged that E. Sauceda falsified a legal document to label plaintiff as a homosexual in order to inflict harm on plaintiff.  (Id.)

Plaintiff's Exhibit 5 (ECF No. 40-2 at 18-37) includes documents regarding plaintiff's appeal no. MCSP-C-07-0042.  In this grievance, originally filed on February 9, 2007, plaintiff claimed that prison guards in administrative segregation, including former defendants Hernandez, Alziebler, Abshire and Pagala, gave letters he received from family, friends and girlfriends to prison gang members so that the gang members could murder and assault his family, friends and girlfriends.  (ECF No. 40-2 at 27, 31.)  This appeal was granted in part at the second level of review on June 12, 2007.  (Id. at 31-34.)  There is no evidence that plaintiff requested a Director's Level Review of this grievance.

Plaintiff's Exhibit 6 (ECF No. 40-2 at 38-48, 40-3 at 1-17) began with an inmate complaint dated August 4, 2011, alleging that prison staff leaked harmful documents deemed confidential.  (ECF No. 40-2 at 40.)  On August 24, 2011, this appeal was cancelled as untimely.  (Id. at 39.)

Plaintiff's Exhibit 7 (ECF No. 40-3 at 18-38) includes documents related to a grievance filed by plaintiff on December 30, 2010, complaining that prison staff had repeatedly broadcast "sexually explicit and highly invasive material" regarding plaintiff.  (ECF No. 40-3 at 19.)  On January 6, 2011, this grievance was returned to plaintiff on grounds that it was duplicative of another appeal.  (Id. at 26.)

Plaintiff's exhibit 8 (ECF No. 40-3 at 39-45) includes documents related to an inmate complaint filed by plaintiff on March 7, 2011, alleging sexual harassment by prison staff.  (ECF No. 40-3 at 40.)  This appeal was cancelled, although the grounds of the cancellation are unclear.  (Id.)

Plaintiff's Exhibit 9 (ECF No. 40-3 at 47-53) includes documents related to an inmate complaint filed by plaintiff on May 14, 2011, complaining about retaliation and sexual

1    discrimination.  (ECF No. 40-3 at 48.)  This appeal was screened out as untimely.  (Id. at 53.)

2         Plaintiff's Exhibit 11 (ECF No. 40-3 at 61-79) includes documents regarding plaintiff's

3    appeal no. MCSP-C-07-0628.  In the first level grievance, signed by plaintiff on March 5, 2007,

4    plaintiff alleged sexual misconduct by prison staff.  (ECF No. 40-3 at 63.)  On June 15, 2007, the

5    second level appeal was denied.  (Id. at 67-68.)  This response stated that plaintiff was

6    complaining that Medical Technical Assistant Miranda accessed his medical records and made

7    copies of obscene materials, which he gave to another inmate.  (Id. at 67.)  Attached to exhibit 11

8    is a copy of the memorandum to plaintiff returning his Director Level Appeal for grievance

9    MCSP 07-0328 as untimely.  (Id. at 62.)  Plaintiff submitted no documents demonstrating that he

10   filed a Director's Level appeal regarding appeal MCSP 07-0628.

11   Defendants' Evidence

12        In support of the pending motion, defendants submitted the declaration of M. Elorza,

13   appeals coordinator at MCSP, where the alleged deprivations occurred.  (ECF No. 111-3.)

14   Defendants previously submitted this declaration in support of the earlier filed motion to dismiss

15   for failure to exhaust administrative remedies.

16        M. Elorza states that between December 3, 2006, and November 7, 2008, plaintiff

17   submitted seventeen non-medical appeals which were accepted for formal review at MCSP.  (Id.

18   at 3.)  M. Elorza's declaration contains a chart of these appeals, including the log number, date

19   received, personnel involved, the issue and the disposition.  (Id. at 3-5.)  The undersigned

20   summarizes the chart herein.

21        In the chart, M. Elorza identifies grievance MCSP-C-07-00328, included in plaintiff's

22   exhibit 4.  M. Elorza confirms that this grievance was received on February 14, 2007, and denied

23   at the second level of review, and not pursued to the Director's Level.  (Id. at 3.)

24        In the chart, M. Elorza identifies grievance no. MCSP-C-07-0042, included in plaintiff's

25   exhibit 5.  M. Elorza confirms that this grievance was granted in part at the second level of review

26   and not pursued to the Director's Level.  (Id.)

27        In the chart, M. Elorza identifies grievance no. MCSP-C-07-0628, referred to in plaintiff's

28   exhibit 11.  M. Elorza states that this grievance was denied at the second level of review.  (Id.)

The chart contained in M. Elorza's declaration goes on to describe the 14 other non-medical grievances submitted by plaintiff during the relevant time period:  1)  MCSP-07-916 received April 18, 2007, alleging that Hernandez sexually harassed plaintiff by winking at him; denied at first level of review on June 8, 2007; 2) MCSP C-07-0940 received April 23, 2007, alleging mail tampering by Ziebert, Abshire and Hernandez; granted in part at second level of review on July 30, 2007; 3) MCSP C-07-1098 received May 1, 2007, alleging that Rutherford conducted an inadequate investigation of appeal no. MCSP C-07-238; denied on June 12, 2007; 4) MCSP C-07-1200, received on May 18, 2007, alleging that Hernandez and Sauceda labeled plaintiff as a homosexual, etc;, granted in part at first level of review on June 14, 2007; 5) MCSP C-07-1588, received on July 3, 2007, alleging that Pagala sexually harassed plaintiff; granted in part at first level of review on July 23, 2007; 6) MCSP C-07-1731, received July 5, 2007, alleging that Cherry conducted an incomplete investigation of MCSP C-07-6278; denied at second level of review on August 16, 2007; 7) MCSP C-07-2695, received October 13, 2007, alleging that Sauceda, Pagala, Abshire, Dixon, Pollard, Rutherford, Kawalcheck, Hernandez, Dion, Rogel, Subia and Reyes solicited rape, mail theft, etc.; granted in part at the first level of review on November 30, 2007; 8)  MCSP-C-08-1340, received May 23, 2008, alleging that Dixon and Farmer placed plaintiff's breakfast on a paper tray; granted in part on June 4, 2008; 9)  MCSP C-08-1930, received on July 28, 2008, alleging that Sisneros and Sutterland damaged personal property; granted in part at second level of review on October 15, 2008; 10)  MCSP C-08-2108, received August 18, 2008, alleging that Farmer denied plaintiff due process at a disciplinary hearing; denied at second level of review on September 23, 2008; 11) MCSP C-08-2183, received on August 26, 2008, challenging confiscation of Maxim magazine; granted in part at first level of review; 12) MCSP-C-08-2464, received October 7, 2008, alleging that Sutterland confiscated personal property; granted in part at first level of review on November 18, 2008; 13) MCSP-C-08-2521, received October 17, 2008, alleging damage of personal property; granted in part at first level of review on November 5, 2008; 14) MCSP-C-08-2525, received October 17, 2008, alleging damage to personal property; granted in part at first level on November 5, 2008.  (Id. at 3-5).

////

1    After reviewing the chart, the undersigned finds that none of the grievances cited in the

2    chart demonstrate exhaustion of the claims against defendants Hart, Munoz or Rogel.

3    Defendants also submitted the declaration of J.D. Lozano, Chief of the Office of Appeals

4    for the California Department of Corrections and Rehabilitation ("CDCR").  (Id. at 12-13.)

5    Defendants previously submitted this declaration in support of the earlier filed motion to dismiss

6    for failure to exhaust administrative remedies.

7    J.D. Lozano states that the Office of Inmate Appeals tracking system discloses that

8    between December 3, 2006, and November 7, 2011, plaintiff submitted sixteen appeals to the

9    Office of Inmate Appeals.  (Id. at13.)  Of these appeals, four were accepted and one pertained to

10   an incident which occurred at MCSP.  (Id.)  This appeal, which was formally denied at the Third

11   Level of Review, originated from an event involving plaintiff's personal property which was first

12   screened out on October 26, 2006, for missing time constraints.  (Id.)  J.D. Lozano's declaration

13   also demonstrates that plaintiff did not administratively exhaust the claims made against

14   defendants Hart, Munoz and Rogel.

15   Discussion

16   On November 17, 2014, plaintiff filed an opposition to defendants' summary judgment

17   motion.  (ECF No. 130.)  Plaintiff appears to concede that he did not pursue any grievance to the

18   third level of review with respect to his claims against defendants Hart, Munoz and Rogel.

19   Instead, plaintiff alleges that he could not pursue his administrative remedies because defendants

20   retaliated against him for filing grievances and sexually harassed him.

21   In particular, plaintiff alleges that he repeatedly filed grievances seeking protection and

22   safety, but "received only discrimination and non-protection," which caused him to be

23   intimidated, afraid and threatened.  (Id. at 7.)  Plaintiff alleges that defendant Hart began stealing

24   his mail and gave it to some sexually violent prison gang members.  (Id.)  Plaintiff alleges that

25   when he filed administrative grievances challenging the theft of his mail, etc., defendants' co-

26   workers conducted an investigation which corroborated his allegations.  (Id. at 8.)  Plaintiff

27   alleges that despite this corroboration, his appeals were denied.  (Id.)  Plaintiff further alleges that

28   his grievances were screened out for arbitrary and fraudulent reasons.  (Id. at 9.)  Plaintiff alleges

1    that his ability to pursue administrative remedies was "chilled" by sexual abuse.  (Id. at 16.)

2          Plaintiff's supplemental opposition reiterates the arguments made in the opposition.

3    Plaintiff further argues that because he was denied access to Title 15 during the relevant time

4    period, he did not have adequate knowledge of the administrative appeals process.  (ECF No. 142

5    at 6-8.)

6          In his opposition to the motion to dismiss for failure to exhaust administrative remedies

7    filed on behalf of the other defendants, plaintiff also argued that his ability to exhaust

8    administrative remedies was blocked by defendants' misconduct, threats, soliciting rape and

9    violence and retaliation.  The undersigned rejected this argument in the December 19, 2013

10   findings and recommendations recommending that defendants' motion to dismiss be granted.

11   (ECF No. 93 at 10-11.)  For the same reasons stated in the December 19, 2013 findings and

12   recommendations, the undersigned again rejects this argument.

13          "[T]he PLRA ... does not require exhaustion when circumstances render administrative

14   remedies 'effectively unavailable.'"  Sapp, 623 F.3d at 822 (citation omitted).  The Ninth Circuit

15   has acknowledged that other circuits have held that threats of retaliation for filing a grievance

16   excuse exhaustion.  Albino v. Baca, 697 F.3d 1023, 1034 n. 7 (9th Cir. 2012) (citing Turner v.

17   Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Macias v. Zenk, 495 F.3d 37, 45 (2d Cir. 2007);

18   Kaba v. Stepp, 458 F.3d 678, 685-86 (7th Cir. 2006).

19          As observed by defendants in the reply to plaintiff's original opposition, plaintiff's

20   argument that he did not pursue administrative remedies because he was threatened with

21   retaliation is undermined by his filing of seventeen administrative grievances between January

22   2007 and October 2008.  In January 2007, plaintiff filed a grievance alleging that defendant Hart

23   made false claims against him.  (ECF No. 40-1 at 51-88.)  On or around February 9, 2007,

24   plaintiff filed a grievance alleging that former defendants Hernandez, Alziebler, Abshire and

25   Pagala gave his mail to gang members so that they would sexually assault plaintiff's family,

26   friends and girlfriends.  (ECF No. 40-2 at 18-37.)  On or around March 5, 2007, plaintiff

27   submitted a grievance alleging that former defendant Miranda made copies of plaintiff's records

28   and gave them to another inmate.  (ECF No. 40-3 at 61-79.)  Plaintiff pursued these grievances to

1   the second level of review.  The alleged threats of retaliation and harassment did not prevent

2   plaintiff from filing and pursuing these administrative remedies.  For these reasons, the

3   undersigned finds that plaintiff has not demonstrated that threats of retaliation and harassment

4   prevented him from exhausting his administrative remedies.

5          In his supplemental opposition, plaintiff argues that he could not pursue his administrative

6   remedies because he did not have a copy of Title 15 which contained the regulations regarding

7   administrative exhaustion.  While plaintiff may not have had a copy of Title 15, he clearly was

8   aware of the process for pursuing his administrative remedies, as demonstrated by the numerous

9   grievances he filed.

10         For the reasons discussed above, the undersigned finds that plaintiff failed to exhaust his

11  administrative remedies.  Accordingly, defendants' summary judgment motion should be granted.

12  Plaintiff's Motion to Stay

13         On February 25, 2015 plaintiff filed a motion to stay this action.  (ECF No. 148.)

14  Attached to this request is a declaration allegedly signed by inmate Joseph Dee.  Inmate Dee

15  states that defendants sexually harassed and video recorded a strip search of inmate Dee on or

16  around October 25, 2005.  In the motion itself, plaintiff requests a stay so that he may conduct

17  further discovery to prove his claims that defendants interfered with his ability to exhaust

18  administrative remedies.

19         Plaintiff has not demonstrated good cause to stay this action.  Alleged sexual harassment

20  of inmate Dee does not demonstrate plaintiff's inability to exhaust his administrative remedies.

21  As discussed above, plaintiff's filing of numerous grievances undermines any claim that

22  defendants' misconduct hampered his ability to exhaust his administrative remedies.

23  Accordingly, plaintiff's motion to stay should be denied.

24         Accordingly, IT IS HEREBY ORDERED that defendants' motion to dismiss (ECF No.

25  114) is vacated; and

26         IT IS HEREBY RECOMMENDED that:

27         1.  Defendants' motion for summary judgment (ECF No. 111) be granted;

28         2.  Plaintiff's motion to stay (ECF No. 148) be denied;

                                          14

1    3.  This action be dismissed.

2    These findings and recommendations are submitted to the United States District Judge

3   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

4   after being served with these findings and recommendations, any party may file written

5   objections with the court and serve a copy on all parties.  Such a document should be captioned

6   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

7   objections shall be served and filed within fourteen days after service of the objections.  The

8   parties are advised that failure to file objections within the specified time may waive the right to

9   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10  Dated:  March 6, 2015

11

12  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

13

14

15  Ar2959.sj

16

17

18

19

20

21

22

23

24

25

26

27

28